ELECTRONIC

**AUG 03, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

U.S. Department of Justice
United States Attorneys

# RULE 20

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

THE UNITED STATES OF AMERICA )
                                )
    v.                      )         Criminal No. CR 04-126-2 (EGS)
                                )
DIEGO MONTOYA SANCHEZ    **09-20665-CR-JORDAN/MCALILEY**

## CONSENT TO TRANSFER OF CASE
## FOR PLEA AND SENTENCE
### (Under Rule 20)

**FILED**

JUL 3 1 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I, <u>DIEGO MONTOYA SANCHEZ</u>, have been informed that an <u>Indictment</u> is pending against me in the above

designated cause. I wish to plead <u>guilty</u> to the offenses charged, to consent to the disposition of the case in the <u>Southern</u>

<u>District of Florida, (Miami Division)</u> in which I <u>am under arrest</u>, and to waive trial in the above captioned District.

Dated: <u>July 22,</u>     , 2009

*(signature)*
DIEGO MONTOYA SANCHEZ
Defendant

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk

By _____
       Deputy Clerk

*(signature)*
William A. Clay, Esq.
Counsel for the Defendant

Approved: *(signature)*

PAUL M. O'BRIEN, Chief
Narcotic and Dangerous Drug Section
United States Department of Justice
Washington, D.C.

Approved: *(signature)*

JEFFREY H. SLOMAN
Acting United States Attorney for the
Southern District of Florida

FORM USA-153
(Rev. March 1983)

U.S. Department of Justice

Rule 20 - Transfer Notice

| To:   JEFFREY H. SLOMAN<br>Acting United States Attorney for the<br>Southern District of Florida | District:<br><br>Southern District of Florida<br>(Miami Division) | Date:<br><br>July 20, 2009 |
|---|---|---|
| Name of Subject:<br><br>DIEGO MONTOYA SANCHEZ | Statute Violations:<br><br>18 U.S.C. § 1962(c) [RICO] | File Data (Initials and Number):<br><br>04-126 (EGS) -02- |

**RULE 20**

**Part A - District of Arrest**

[ ]   The above-named subject has been apprehended in this jurisdiction and indicates amenability to Rule 20 disposition of the charges pending against him in your district. Kindly indicate whether you are agreeable to Rule 20 disposition and forward two certified copies of indictment or information if any.

[ ]   Enclosed is certified copy of waiver of indictment executed by defendant. Kindly file criminal information and forward two certified copies thereof.

[X]   Enclosed is Consent to Transfer form executed in duplicate (one copy for your files) by defendant and the United States Attorney in the district of arrest. Kindly add your consent and have the Clerk of your district transmit the papers in the proceedings or certified copies thereof to the Clerk of the Court in this district in accordance with Rule 20.
Criminal No. 04-126-2 (EGS) (D.D.C.)

[ ]   Other (Specify):

[ ]   The above-named defendant entered a plea of guilty under Rule 20.
Date of Plea:                Date of Sentence:                Sentence:

**FILED**

**JUL 3 1 2009**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| From (Signature and Title):<br><br>PAUL M. O'BRIEN, Chief<br>Narcotic and Dangerous Drug Section<br>U.S. Department of Justice | Address:<br>Narcotic and Dangerous Drug Section<br>U.S. Department of Justice<br>1400 New York Ave., N.W.<br>Washington, D.C. 20005 |
|---|---|

**Part B - District of Offense**

[X]   I am agreeable to Rule 20 disposition.

[ ]   I am not agreeable to Rule 20 disposition. Defendant's appearance is desired at
         on             at             o'clock.
(Kindly notify me of any anticipated delay.)

[X]   Enclosed are two certified copies of indictment or information. Docket No.04-126-2 (EGS) (D.D.C.)

[ ]   Please have defendant execute waiver of indictment.

[ ]   Other (Specify):

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By _____
Deputy Clerk

| Signature (Name and Title):<br><br>JEFFREY H. SLOMAN<br>Acting United States Attorney for the<br>Southern District of Florida | District:<br><br>Southern District of Florida | Date:<br><br>7/04/09 |
|---|---|---|

See United States Attorneys Manual 9-14.000 for an explanation of procedures under Rule 7 & 20, Federal Rules of Criminal Procedure.

Replaces OBD-101, Feb. 83 edition may be used
FORM USA-731

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:04-cr-00126-EGS-2
## Internal Use Only

Case title: USA v. VARELA et al

Date Filed: 03/11/2004

Assigned to: Judge Emmet G. Sullivan

### Defendant (2)
**DIEGO LEON MONTOYA-SANCHEZ**

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1962(c); RACKETEERING; Racketeering. (1) | Rule 20 Transfer to the U.S.D.C. for the Southern District of Florida, Miami Division |
| 18:1962(c); RACKETEERING - NARCOTICS; RICO (1s) | Rule 20 Transfer to the U.S.D.C. for the Southern District of Florida, Miami Division |
| 18:1962(d); RACKETEERING; Racketeering Conspiracy. (2) | Rule 20 Transfer to the U.S.D.C. for the Southern District of Florida, Miami Division |
| 18:1962(d);CONTINUING CRIMINAL ENTERPRISE;RICO Conspiracy (2s) | Rule 20 Transfer to the U.S.D.C. for the Southern District of Florida, Miami Division |
| 21:963, 959(c), 960(a)(3) and 960(b)(1) (B)(ii); ATTEMPT/CONSPIRACY NARCOTICS - IMPORTATION; Conspiracy to Import Five Kilograms or More of Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States. | Rule 20 Transfer to the U.S.D.C. for the Southern District of Florida, Miami Division |

(3)

21:963, 959(c), 960(a)(3) and 960(b)(1)
(B)(ii); ATTEMPT/CONSPIRACY -
NARCOTICS -
IMPORTATION/EXPORTATION;
Conspiracy to Import Five Kilogrms or
more of Cocaine and to Manufacture
and Distribute Five Kilograms or More
of Cocaine Intending and Knowing that
the Cocaine Will Be Unlawfully
Imported into the United States.
(3s)

Rule 20 Transfer to the U.S.D.C. for the
Southern District of Florida, Miami
Division

## Highest Offense Level (Terminated)

Felony

## Complaints

None

## Disposition

## Plaintiff

USA

represented by **Glenn C. Alexander**
U.S. DEPARTMENT OF JUSTICE
Narcotic and Dangerous Drug Section
1400 New York Avenue, NW
Bond Building ,8th Floor,
Washington , DC 20005
(202) 305-0524
Fax: (202) 305-9825
Email: glenn.alexander@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc P. Berger**
UNITED STATES DEPARTMENT OF
JUSTICE
U.S. Attorney's Office, Southern
District of New York
One St. Andrew's Plaza
New York , NY 10007
(212) 637-2207
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie Laflin**
U.S. DEPARTMENT OF JUSTICE
Criminal Division

1400 New York Avenue, NW
Suite 800
Washington , DC 20005
(202) 514-4502
Email: melanie.laflin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael C. Mota**
U.S. DEPARTMENT OF JUSTICE
Narcotic and Dangerous Drug Section
1400 New York Avenue, NW
Room 8124
Washington , DC 20530
(202) 514-5540
Email: michael.mota@usdoj.gov
*TERMINATED: 07/25/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Weyler**
UNITED STATES DEPARTMENT OF
JUSTICE
Criminal Division
1400 New York Avenue, 8th floor
Washington , DC 20005
(202) 353-2586
Email: sarah.weyler@usdoj.gov
*TERMINATED: 07/25/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/11/2004 | 1 | (UNSEALED 8/4/04) SEALED INDICTMENT as to WILBER VARELA (1) count(s) 1, 2, 3, DIEGO LEON MONTOYA-SANCHEZ (2) count(s) 1, 2, 3, LUIS HERNANDO GOMEZ-BUSTAMANTE (3) count(s) 1, 2, 3, ARCANGEL HENAO-MONTOYA (4) count(s) 1, 2, 3, JUAN CARLOS RAMIREZ-ABADIA (5) count(s) 1, 2, 3, CARLOS ALBERTO RENTERIA-MANTILLA (6) count(s) 1, 2, 3, GABRIEL PUERTA-PARRA (7) count(s) 1, 2, 3, DANILO ALFONSO GONZALEZ-GIL (8) count(s) 1, 2, 3, JORGE ORLANDO RODRIGUEZ-ACERO (9) count(s) 1, 2, 3, JAIRO APARICIO-LENIS (10) count(s) 2, 3. (FORFEITURE ALLEGATION) (zhsj, ) Modified on 3/27/2008 (mlp) (Entered: 03/23/2004) |
| 03/11/2004 | | DOB: 1/11/58 and PDID NO. N/A as to DIEGO LEON MONTOYA-SANCHEZ (zhsj, ) (Entered: 03/23/2004) |
| 03/11/2004 | | Bench Warrant Issued by Magistrate Judge John M. Facciola as to DIEGO LEON MONTOYA-SANCHEZ. (zhsj, ) (Entered: 03/23/2004) |

| 03/11/2004 | | Bench Warrant Issued by Magistrate Judge John M. Facciola as to DIEGO LEON MONTOYA-SANCHEZ. (zhsj, ) (Entered: 03/23/2004) |
|---|---|---|
| 03/11/2004 | 2 | (UNSEALED 8/4/04) MOTION to place Under Seal until further notice of the Court, the Indictment, the Motion to Seal and the Court's Order to seal by USA as to WILBER VARELA, DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, DANILO ALFONSO GONZALEZ-GIL, JORGE ORLANDO RODRIGUEZ-ACERO, JAIRO APARICIO-LENIS. (zhsj, ) Modified on 3/23/2004 (zhsj, ). Modified on 3/27/2008 (mlp) (Entered: 03/23/2004) |
| 03/11/2004 | 3 | ORDER granting 2 Motion to to place Under Seal until further notice of the Court, the Indictment, the Motion to Seal and the Court's Order to Seal as to WILBER VARELA (1), DIEGO LEON MONTOYA-SANCHEZ (2), LUIS HERNANDO GOMEZ-BUSTAMANTE (3), ARCANGEL HENAO-MONTOYA (4), JUAN CARLOS RAMIREZ-ABADIA (5), CARLOS ALBERTO RENTERIA-MANTILLA (6), GABRIEL PUERTA-PARRA (7), DANILO ALFONSO GONZALEZ-GIL (8), JORGE ORLANDO RODRIGUEZ-ACERO (9), JAIRO APARICIO-LENIS (10). Signed by Magistrate Judge John M. Facciola on 3/11/04. (zhsj, ) (Entered: 03/23/2004) |
| 03/11/2004 | | (UNSEALED 8/4/04) Case sealed as to WILBER VARELA, DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, DANILO ALFONSO GONZALEZ-GIL, JORGE ORLANDO RODRIGUEZ-ACERO, JAIRO APARICIO-LENIS by Magistrate Judge John M. Facciola. (zhsj, ) Modified on 3/27/2008 (mlp) (Entered: 03/23/2004) |
| 03/11/2004 | | (Court only) ***Procedural Interval start (P2) as to WILBER VARELA, DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, DANILO ALFONSO GONZALEZ-GIL, JORGE ORLANDO RODRIGUEZ-ACERO, JAIRO APARICIO-LENIS (Hilton, Tommy) (Entered: 08/26/2005) |
| 04/29/2004 | 5 | (UNSEALED 8/4/04) MOTION to place Under Seal until 5/6/04 the Superseding Indictment, the Motion to seal and the Court's Order to seal by USA as to LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, JORGE ORLANDO RODRIGUEZ-ACERO, WILBER VARELA, JAIRO APARICIO-LENIS, DIEGO LEON MONTOYA-SANCHEZ. (zhsj, ) Modified on 3/27/2008 (mlp) (Entered: 05/05/2004) |
| 04/29/2004 | 6 | (UNSEALED 8/4/04) ORDER granting 5 Motion to place Under Seal until 5/6/04 the Superseding Indictment, the Motion to seal and the Court's Order to seal as to WILBER VARELA (1), DIEGO LEON MONTOYA- |

District of Columbia live database

| | | |
|---|---|---|
| | | SANCHEZ (2), LUIS HERNANDO GOMEZ-BUSTAMANTE (3), ARCANGEL HENAO-MONTOYA (4), JUAN CARLOS RAMIREZ-ABADIA (5), CARLOS ALBERTO RENTERIA-MANTILLA (6), GABRIEL PUERTA-PARRA (7), JORGE ORLANDO RODRIGUEZ-ACERO (9), JAIRO APARICIO-LENIS (10).Signed by Magistrate Judge Deborah A. Robinson on 4/29/04. (zhsj, ) Modified on 3/27/2008 (mlp) (Entered: 05/05/2004) |
| 04/29/2004 | 7 | SEALED SUPERSEDING INDICTMENT as to WILBER VARELA (1) count(s) 1s, 2s, 3s, DIEGO LEON MONTOYA-SANCHEZ (2) count(s) 1s, 2s, 3s, LUIS HERNANDO GOMEZ-BUSTAMANTE (3) count(s) 1s, 2s, 3s, ARCANGEL HENAO-MONTOYA (4) count(s) 1s, 2s, 3s, JUAN CARLOS RAMIREZ-ABADIA (5) count(s) 1s, 2s, 3s, CARLOS ALBERTO RENTERIA-MANTILLA (6) count(s) 1s, 2s, 3s, GABRIEL PUERTA-PARRA (7) count(s) 1s, 2s, 3s, JORGE ORLANDO RODRIGUEZ-ACERO (9) count(s) 1s, 2s, 3s, JAIRO APARICIO-LENIS (10) count(s) 1s, 2s, 3s. (FORFEITURE ALLEGATION) (zhiltont, ) (Entered: 05/13/2004) |
| 08/04/2004 | | Case unsealed by Judge Emmet G. Sullivan as to WILBER VARELA, DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, DANILO ALFONSO GONZALEZ-GIL, JORGE ORLANDO RODRIGUEZ-ACERO, JAIRO APARICIO-LENIS. (zhsj, ) (Entered: 08/11/2004) |
| 08/04/2004 | | Case unsealed as to WILBER VARELA, DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, JUAN CARLOS RAMIREZ-ABADIA, CARLOS ALBERTO RENTERIA-MANTILLA, GABRIEL PUERTA-PARRA, DANILO ALFONSO GONZALEZ-GIL, JORGE ORLANDO RODRIGUEZ-ACERO, JAIRO APARICIO-LENIS. (mlp) (Entered: 03/27/2008) |
| 07/31/2009 | 71 | CONSENT TO TRANSFER CASE for Plea and Sentence (Rule 20) to the U.S.D.C. for the Southern District of Florida, Miami Division signed by the defendant, defense counsel, U.S. Attorneys for the Southern District of Florida and the District of Columbia. Counts 1,1s,2,2s,3 and 3s closed as to DIEGO LEON MONTOYA-SANCHEZ (2). (tnr, ) (Entered: 08/03/2009) |
| 07/31/2009 | 72 | RULE 20 Transfer Notice by USA as to DIEGO LEON MONTOYA-SANCHEZ transferring case to the U.S.D.C. for the Southern District of Florida, Miami Division. Certified copies of docket sheet, Indictment, Superseding Indictment, Transfer Notice, and Consent to Transfer of Case for Plea and Sentence forwarded. (tnr, ) (Entered: 08/03/2009) |
| 07/31/2009 | | (Court only) ***Terminated defendant DIEGO LEON MONTOYA-SANCHEZ, pending deadlines, and motions. (tnr, ) (Entered: 08/03/2009) |

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk

By _____
Deputy Clerk

FILED IN OPEN COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APR 2 9 2004

Holding a Criminal Term

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

Grand Jury Sworn in on March 3, 2003

| | |
|---|---|
| UNITED STATES OF AMERICA <br> ~~UNSEALED~~ <br> -v- <br><br> WILBER ALIRIO VARELA, <br>      a/k/a "Detergente," <br>      a/k/a "Jabon," <br> DIEGO LEON MONTOYA-SANCHEZ, <br> LUIS HERNANDO GOMEZ-BUSTAMANTE, <br>      a/k/a "Rasguno," <br> ARCANGEL HENAO-MONTOYA, <br>      a/k/a "El Mocho," <br> JUAN CARLOS RAMIREZ-ABADIA, <br>      a/k/a "Chupeta," <br> CARLOS ALBERTO RENTERIA-MANTILLA, <br>      a/k/a "Beto Renteria," <br> GABRIEL PUERTA-PARRA, <br>      a/k/a "Doctor Puerta," <br> JORGE ORLANDO RODRIGUEZ-ACERO, <br>      a/k/a "El Mono Ciquenta," and <br> JAIRO APARICIO-LENIS, <br>      a/k/a "Don Pedro," <br><br>           Defendants. | : CRIMINAL NO. 04-126 <br> : <br> : GRAND JURY ORIGINAL <br> : <u>FILED UNDER SEAL</u> <br> : VIOLATIONS: <br> : <br> : 18 U.S.C. § 1962(c) <br> : (RICO) <br> : <br> : 18 U.S.C. § 1962(d) <br> : (RICO Conspiracy) <br> : <br> : 21 U.S.C. § 963 <br> :(Conspiracy to Import Five <br> : Kilograms or More of <br> : Cocaine and to Manufacture <br> : and Distribute Five <br> : Kilograms of More of Cocaine <br> : Intending and Knowing that <br> : the Cocaine Will Be <br> : Unlawfully Imported into <br> : the United States) <br> : <br> : 18 U.S.C. § 1963(a) <br> : 21 U.S.C. § 853 <br> : (Forfeiture) |

SULLIVAN, J. EGS

B

SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

COUNT ONE

Racketeering Violation

The Grand Jury charges:

At all times relevant to this Indictment:

SUPERSEDING

## The Enterprise

1.    Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, were members of the Norte Valle Cartel (the "NVC"), a criminal organization whose members engaged in: (a) the illegal trafficking of cocaine; (b) the laundering of drug proceeds; (c) the bribing of Colombian law enforcement officials and Colombian politicians; and (d) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the NVC.

2.    The NVC operated principally in the Norte de Valle del Cauca region of Colombia, the city of Cali, Colombia, and the Pacific Coast city of Buenaventura, Colombia, as well as Mexico and the United States.  The NVC exported multi-ton loads of cocaine primarily from Colombia's Pacific Coast.  The NVC worked with various Colombian transportation specialists to transport the cocaine from Peru, Colombia, and other locations within South America towards the Valle del Cauca region of Colombia.  The NVC

2

then transported the cocaine by truck or airplane through the Valle del Cauca region to the Pacific Coast port city of Buenaventura. The NVC worked with various Mexican transportation groups and shipped cocaine loads to Mexico via go-fast boats, fishing vessels, and other maritime conveyances. Between 1990 and the present, the NVC exported more than 500,000 kilograms of cocaine worth more than $10 billion from Colombia to Mexico and ultimately to the United States and became the most powerful cocaine-trafficking organization in Colombia.

3.  The NVC used violence and brutality to further its goals. The NVC routinely murdered their rivals, individuals who failed to pay for drugs, and NVC members and associates whose loyalty was suspect. The NVC used the services of the Autodefensas Unidas de Colombia (the "AUC"), a terrorist paramilitary organization which is engaged in warfare with the Fuerzas Armadas Revolucionarios de Colombia (the "FARC"), Colombia's main guerilla group, to protect its drug routes, its drug laboratories, and its members and associates.

4.  The NVC, including its leadership, membership, and associates, constituted an "Enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the Enterprise"), that is, a group of individuals associated in fact. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving

3

the objectives of the Enterprise.  The Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<u>The Members of the Enterprise</u>

5.  At various times relevant to this Indictment, the Defendants and other individuals listed below were members of the Enterprise and played the following roles, among others, in furthering the affairs of the Enterprise:

a.  Orlando Henao-Montoya was the leader of the Enterprise until his murder on November 13, 1998 by a rival Colombian drug cartel.  Until his death, Orlando Henao-Montoya had the ultimate decision-making authority over all major Enterprise decisions, including the organization and transportation of shipments of drugs from Colombia to Mexico and ultimately to the United States and enforcement activities undertaken by members of the Enterprise against rival drug traffickers, suspected informants, and other enemies of the Enterprise.

b.  WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," and CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," the defendants, were at various times relevant to this Indictment narcotics traffickers and members of the Enterprise.  The criminal

4

activities of VARELA, MONTOYA-SANCHEZ, GOMEZ-BUSTAMANTE, ARCANGEL HENAO-MONTOYA, RAMIREZ-ABADIA, and RENTERIA-MANTILLA included participation in conspiracies to do the following:  (1) the illegal trafficking of cocaine; (2) the laundering of drug proceeds; (3) the bribing of Colombian law enforcement officials and Colombian politicians; and (4) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the Enterprise.

   c. GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," the defendant, was at various times relevant to this Indictment an attorney and counselor to the Enterprise.  PUERTA-PARRA was responsible for (among other things) resolving internal disputes within the Enterprise and representing the interests of the members and associates of the Enterprise in disputes with other rival Colombian drug cartels.  PUERTA-PARRA's criminal activities included participation in conspiracies to do the following:  (1) the illegal trafficking of cocaine; (2) the laundering of drug proceeds; (3) the bribing of Colombian law enforcement and public officials; and (4) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the Enterprise.

   d. Danilo Alfonso Gonzalez-Gil, until his murder on March 25, 2004, and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendant, were at various times relevant to

5

this Indictment high-ranking officials with the Colombian National Police ("CNP") and members of the Enterprise who acted as enforcers by, in part, kidnaping and murdering individuals who posed a threat to the position, territory, and power of the Enterprise.  Gonzalez-Gil and RODRIGUEZ-ACERO also used their influence within the CNP to protect other members and associates of the Enterprise and to protect the Enterprise's drug loads and drug routes from law enforcement scrutiny of their criminal activities.  The criminal activities of Gonzalez-Gil and RODRIGUEZ-ACERO included participation in conspiracies to do the following:  (1) the illegal trafficking of cocaine; (2) the laundering of drug proceeds; (3) the bribing of Colombian law enforcement and public officials; and (4) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the Enterprise.

e.   JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendant, was at various times relevant to this Indictment a member of the Enterprise responsible for laundering the Enterprise's cocaine proceeds.

### Purposes of the Enterprise

6.   The purposes of the Enterprise included the following:

a.   Enriching members and associates of the Enterprise through the importation and distribution of illegal

6

drugs in Colombia, Mexico and the United States and the laundering of drug proceeds;

    b.   Preserving and protecting the Enterprise's control over the Colombian cocaine-trafficking business through the use of intimidation, threats of violence, and violence, including kidnaping, torture, and murder;

    c.   Keeping rival drug traffickers, suspected informants and witnesses, and other enemies of the Enterprise in fear of the Enterprise and in fear of its members and associates through threats of violence and violence; and

    d.   Promoting and enhancing the Enterprise and its members' and associates' activities.

<u>Means and Methods of the Enterprise</u>

7.   Among the means and methods by which the defendants, their co-racketeers and other Enterprise members and associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

    a.   Defendants, along with other members and associates of the Enterprise, acquired raw cocaine paste from individuals in Peru, Colombia, and other places in South America to be processed at laboratories within Colombian;

    b.   Defendants, along with other members and associates of the Enterprise, arranged for multi-ton quantities of processed cocaine to be transported from the laboratories

7

through the Norte de Valle del Cauca region of Colombia and
ultimately to the Pacific Coast of Colombia, including the city
of Buenaventura, Colombia;

      c.   Defendants, along with other members and
associates of the Enterprise, pooled their multi-ton cocaine
shipments from the Pacific Coast of Colombia and sent the drug
loads on go-fast boats, fishing vessels, and other maritime
conveyances to Mexico;

      d.   Defendants, along with other members and
associates of the Enterprise, coordinated with Mexican
transportation organizations to receive the pooled ton-quantity
loads and send the drugs into the United States;

      e.   Defendants, along with other members and
associates of the Enterprise, jointly arranged for the proceeds
of their drug-trafficking activities in Mexico and the United
States to be smuggled back into Colombia;

      f.   Defendants, along with other members and
associates of the Enterprise, bribed Colombian law enforcement
and other public officials to: (1) protect the Enterprise's
leadership, members, and associates and their drug shipments; (2)
inform Enterprise members and associates of Colombian and United
States law enforcement activities; and (3) block efforts by the
Colombian legislature to permit the extradition of Colombian

8

narcotics traffickers to the United States to face prosecution for their narcotics-trafficking crimes;

g. Defendants, along with other members and associates of the Enterprise, discussed Enterprise affairs and business in person and over communications equipment using various codes to disguise their identities and the meaning of their conversations;

h. Defendants, along with other members and associates of the Enterprise, conducted their own wiretaps to intercept the communications of rival drug traffickers and Colombian and United States law enforcement officials in order to monitor their activities and obtain information useful to the Enterprise;

i. Defendants, along with other members and associates of the Enterprise, organized and directed the kidnaping, torture, and murder of rival drug traffickers and suspected informants in Colombia; and

j. Defendants, along with other members and associates of the Enterprise, used the services of the AUC terrorist organization to protect their drug routes and drug laboratories.

## The Racketeering Violation

8. From in or about 1990 up to and including the present, in the District of Columbia and elsewhere, Orlando

9

Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO

VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-

SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno,"

ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-

ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a

"Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and

JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the

defendants, and others known and unknown, being persons employed

by and associated with the racketeering enterprise described in

Paragraphs One through Seven above, namely, the Norte Valle

Cartel, which enterprise was engaged in, and the activities of

which affected, interstate and foreign commerce, unlawfully,

willfully, and knowingly conducted and participated, directly and

indirectly, in the conduct of the affairs of that enterprise

through a pattern of racketeering activity, as that term is

defined in Title 18, United States Code, Sections 1961(1) and

1961(5), that is, through the commission of the following

racketeering acts:

<u>The Pattern of Racketeering</u>

9.   The pattern of racketeering activity, as defined

in Title 18, United States Code, Sections 1961(1) and 1961(5),

consisted of the following acts:

10

## Racketeering Act One
(Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

10.   From in or about 1990 up to and including the present, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

11.   It was a part and an object of said conspiracy that Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, would and did distribute a controlled substance, intending and

11

knowing that such substance would be imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 959(a) and 963.

12.   It was a further part and an object of said conspiracy that Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, to wit, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Sections 812, 952(a), 960(b)(1)(A), and 963 of Title 21, United States Code.

### Racketeering Act Two
#### (Conspiracy To Launder Cocaine Proceeds)

13.   From in or about 1990 up to and including the present, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a

12

"Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 1956(a)(1)(A)(i) and (B)(i) of Title 18, United States Code.

14. It was a part and an object of the conspiracy that Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, the transfer of millions of dollars of United States Currency, represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions which in fact

13

involved the proceeds of specified unlawful activity, to wit, the proceeds of illegal narcotics transactions, knowing that the transactions were designed in whole and in part (a) to promote the carrying on of specified unlawful activity, and (b) to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

### Racketeering Act Three
### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

15.   On or about April 24, 1993, DIEGO LEON MONTOYA-SANCHEZ, ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," and JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved approximately 7,300 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

### Racketeering Act Four
### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

16.   In or about 1997, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS

14

HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," and ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved more than 10,000 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

<u>**Racketeering Act Five**</u>
**(Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)**

17.   In or about May 2001, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved approximately 13,000 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

In violation of Title 18, United States Code, Section 1962 (c).

15

## COUNT TWO

### Racketeering Conspiracy

The Grand Jury further charges:

18. Paragraphs One through Seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From in or about 1990 up to and including the present, in the District of Columbia and elsewhere, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs One through Four above, namely, the Norte Valle Cartel, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that

16

term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts indictable under the following provisions of federal law:

        a.   Title 21, United States Code, Section 952(a) and 959 (manufacture and distribution of cocaine to be imported into the United States).

        b.   Title 18, United States Code, Sections 1956 and 1957 (money laundering).

        20.  It was a further part of the conspiracy that each defendant agreed that a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**OVERT ACTS**

        21.  In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in Colombia and elsewhere:

**THE ENTERPRISE'S VIOLENCE**

        a.  In or about 1994, Orlando Henao-Montoya and WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," and JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," the defendants, and others known and unknown, conspired to murder and murdered members of the "Los Burros" in Colombia based on their suspicion that the "Los Burros," who worked for the Enterprise providing

17

security for cocaine laboratories, were plotting to kidnap and kill the leadership of the Enterprise.

b.  In or about 1996, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the defendant, and others known and unknown, conspired to murder and murdered Jose Santacruz, a/k/a "Chepe Santacruz," one of the leaders of the rival Cali Cartel, in Colombia.

c.  In or about 1996, Orlando Henao-Montoya, and WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the defendant, and others known and unknown, conspired to murder William Rodriguez-Abadia, the son of Cali Cartel leader Miguel Rodriguez-Orejuela, in Colombia.

d.  On or about November 5, 1998, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the defendant, and others known and unknown, conspired to murder and murdered Helmer Herrera, a/k/a "Pacho Herrera," one of the leaders of the rival Cali Cartel, in Colombia.

e.  On or about January 5, 2003, WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," and ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," the defendants, and others known and unknown, conspired to murder and murdered Miguel Solano-Duran, a member of the Norte Valle Cartel, outside a nightclub in Cartagena,

18

Colombia based on their mutual suspicion that Solano-Duran was working as an informant for the United States Drug Enforcement Administration ("DEA").

      f.   In or about January 2004, JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," the defendant, shot and killed Luis Alfonse Ocampo-Fomeque, a/k/a "Tocayo Patino," a member of the Norte Valle Cartel, in Cali, Colombia based on his suspicion that Ocampo-Fomeque was working as an informant for the DEA.   After the murder, co-conspirators of the Enterprise not named as defendants herein dismembered Ocampo-Fomeque's body.

### THE ENTERPRISE'S BRIBERY OF COLOMBIAN OFFICIALS

      g.   Between in or about 1996 and in or about 1999, members of the Enterprise, including GABRIEL PUERTA-PARRA, a/k/a/ "Doctor Puerta," and others known and unknown, attempted to bribe Colombian legislators to block the passage of a law permitting the extradition of Colombian narcotics traffickers to the United States to face prosecution for their narcotics-trafficking crimes.

      h.   In or about 2000 or 2001, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," the defendants, and Danilo Alfonso Gonzalez-Gil, and others known and unknown, attempted to bribe Colombian

19

legislators to make it more difficult to extradite Colombian narcotics traffickers to the United States to face prosecution for their narcotics-trafficking crimes.

### SELECTED COCAINE SHIPMENTS SEIZED FROM THE ENTERPRISE

i.    On or about April 24, 1993, co-conspirators of the Enterprise not named as defendants herein possessed approximately 7,200 kilograms of cocaine in Mexico that was seized by law enforcement authorities.

j.    On or about April 18, 1998 and May 29, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 1,000 kilograms of cocaine in Mexico that were seized by law enforcement authorities.

k.    On or about June 18, 1998, September 8, 1998, October 23, 1998, and November 25, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 1,900 kilograms of cocaine in various locations throughout the United States that were seized by law enforcement authorities.

l.    On or about September 26, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 445 kilograms of cocaine in Buenaventura, Colombia that were seized by law enforcement authorities.

m.    On or about May 3, 2001, co-conspirators of the Enterprise not named as defendants herein possessed approximately 13,000 kilograms of cocaine on the vessel Svesda

20

Maru in the Pacific Ocean that were seized by law enforcement authorities.

In violation of Title 18, United States Code, Section 1962(d).

## **COUNT THREE**

The Grand Jury further charges:

22.  From in or about 1990 up to and including the present, Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

23.  It was a part and an object of said conspiracy that Orlando Henao-Montoya and Danilo Alfonso Gonzalez-Gil and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-

21

MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, would and did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 959(a).

In violation of Title 21, United States Code, Sections 963, 959(c), 960(a)(3) and 960(b)(1)(B)(ii).

## FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

24.     The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.

25.     Through the aforesaid racketeering activity, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, have interests they have acquired and maintained in

22

violation of Title 18, United States Code, Section 1962, and property constituting, and derived from, proceeds which they obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, thereby making such property, or an amount of cash equivalent thereto, forfeitable to the United States of America pursuant to Title 18, United States Code, Sections 1963(a)(1) and (a)(3). The intent of the United States of America to forfeit such property includes, but is not limited to, the sum of $10 billion in United States Currency. Said defendants are jointly and severally liable to the United States for this amount.

<u>Substitute Assets Provision</u>

26. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants –

       a.   cannot be located upon the exercise of due diligence;

       b.   has been transferred or sold to, or deposited with, a third party;

       c.   has been placed beyond the jurisdiction of the court;

       d.   has been substantially diminished in value; or

23

e.    has been commingled with other

property which cannot be divided

without difficulty;

it is the intention of the United States, pursuant to Title 18,

United States Code, Section 1963(m), to seek forfeiture of any

other property of the defendants up to the value of the

forfeitable property.

In violation of Title 18, United States Code, Section

1963(a).

### FORFEITURE ALLEGATION AS TO COUNT THREE

27.    As a result of committing the controlled substance

offense alleged in Count Three of this Indictment, WILBUR ALIRIO

VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-

SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno,"

ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-

ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a

"Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta,"

JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and

JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, shall

forfeit to the United States, pursuant to Title 21, United States

Code, Section 853, any and all property constituting and derived

from any proceeds that the said defendants obtained directly and

indirectly as a result of the said violation and any and all

property used and intended to be used in any manner or part to

commit and to facilitate the commission of the violation alleged

24

in Count Three of this Indictment, including, but not limited to, the following:

a.   A sum of money equal to approximately $10 billion in United States Currency, representing the amount of proceeds obtained as a result of the controlled substance offenses for which the defendants are jointly and severally liable.

### Substitute Assets Provision

28.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

25

other property of the defendants up to the value of the forfeitable property.

In violation of Title 21, United States Code, Sections 959 and 853.

A TRUE BILL:

FOREPERSON.

Jodi L. Avergun, Chief
Narcotics and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20520

By:  Boyd M. Johnson III, Special Trial Attorney
     Narcotic and Dangerous Drug Section
     Criminal Division
     U.S. Department of Justice
     Washington, D.C. 20530
     (202) 353-2586

     Sarah Weyler, Trial Attorney
     Narcotic and Dangerous Drug Section
     Criminal Division
     U.S. Department of Justice
     Washington, D.C. 20530
     (202) 353-2586

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By _____
                  Deputy Clerk

26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNSEALED

Holding a Criminal Term

Grand Jury Sworn in on March 3, 2003

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. **04-126** |
| | : |
| -v- | : GRAND JURY ORIGINAL |
| | : <u>FILED UNDER SEAL</u> |
| WILBER ALIRIO VARELA, | : VIOLATIONS: |
| a/k/a "Detergente," | : |
| a/k/a "Jabon," | : 18 U.S.C. § 1962(c) |
| DIEGO LEON MONTOYA-SANCHEZ, | : (RICO) |
| LUIS HERNANDO GOMEZ-BUSTAMANTE, | : |
| a/k/a "Rasguno," | : 18 U.S.C. § 1962(d) |
| ARCANGEL HENAO-MONTOYA, | : (RICO Conspiracy) |
| a/k/a "El Mocho," | : |
| JUAN CARLOS RAMIREZ-ABADIA, | : 21 U.S.C. § 963 |
| a/k/a "Chupeta," | : |
| CARLOS ALBERTO RENTERIA-MANTILLA, | :(Conspiracy to Import Five |
| a/k/a "Beto Renteria," | : Kilograms or More of |
| GABRIEL PUERTA-PARRA, | : Cocaine and to Manufacture |
| a/k/a "Doctor Puerta," | : and Distribute Five |
| DANILO ALFONSO GONZALEZ-GIL, | : Kilograms or More of Cocaine |
| a/k/a "Daniela," | : Intending and Knowing that |
| JORGE ORLANDO RODRIGUEZ-ACERO, | : the Cocaine Will Be |
| a/k/a "El Mono Ciquenta," and | : Unlawfully Imported into |
| JAIRO APARICIO-LENIS, | : the United States) |
| a/k/a "Don Pedro," | : |
| | : 18 U.S.C. § 1963(a) |
| | : 21 U.S.C. § 853 |
| Defendants. | : (Forfeiture) |

SULLIVAN, J. EGS

<u>INDICTMENT</u>

THE GRAND JURY CHARGES THAT:

<u>COUNT ONE</u>

<u>Racketeering Violation</u>

The Grand Jury charges:

At all times relevant to this Indictment:

FILED IN OPEN COURT

MAR 1 1 2004

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By _Michael Darby_ 7/14/09
Deputy Clerk

<u>The Enterprise</u>

1.   Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, were members of the Norte Valle Cartel (the "NVC"), a criminal organization whose members engaged in: (a) the illegal trafficking of cocaine; (b) the laundering of drug proceeds; (c) the bribing of Colombian law enforcement officials and Colombian politicians; and (d) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the NVC.

2.   The NVC operated principally in the Norte de Valle del Cauca region of Colombia, the city of Cali, Colombia, and the Pacific Coast city of Buenaventura, Colombia, as well as Mexico and the United States.  The NVC exported multi-ton loads of cocaine primarily from Colombia's Pacific Coast.  The NVC worked with various Colombian transportation specialists to transport the cocaine from Peru, Colombia, and other locations within South America towards the Valle del Cauca region of Colombia.  The NVC

then transported the cocaine by truck or airplane through the Valle del Cauca region to the Pacific Coast port city of Buenaventura.  The NVC worked with various Mexican transportation groups and shipped cocaine loads to Mexico via go-fast boats, fishing vessels, and other maritime conveyances.  Between 1990 and the present, the NVC exported more than 500,000 kilograms of cocaine worth more than $10 billion from Colombia to Mexico and ultimately to the United States and became the most powerful cocaine-trafficking organization in Colombia.

3.    The NVC used violence and brutality to further its goals.  The NVC routinely murdered their rivals, individuals who failed to pay for drugs, and NVC associates whose loyalty was suspect.  The NVC used the services of the Autodefensas Unidas de Colombia ("AUC"), a terrorist paramilitary organization which is engaged in warfare with the Fuerzas Armadas Revolucionarios de Colombia ("FARC"), Colombia's main guerilla group, to protect its drug routes, its drug laboratories, and its members and associates.

4.    The NVC, including its leadership, membership, and associates, constituted an "Enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the Enterprise"), that is, a group of individuals associated in fact. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving

3

the objectives of the Enterprise.  The Enterprise was engaged in, and its activities affected, interstate, and foreign commerce.

### The Members of the Enterprise

5.  At various times relevant to this Indictment, the Defendants and other individuals listed below were members of the Enterprise and played the following roles, among others, in furthering the affairs of the Enterprise:

a.  Orlando Henao-Montoya was the leader of the Enterprise until his murder on November 13, 1998 by a rival Colombian drug cartel.  Until his death, Orlando Henao-Montoya had the ultimate decision-making authority over all major Enterprise decisions, including the organization and transportation of shipments of drugs from Colombia to Mexico and ultimately to the United States and enforcement activities undertaken by members of the Enterprise against rival drug traffickers, suspected informants, and other enemies of the Enterprise.

b.  WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," and CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," the defendants, were at various times relevant to this Indictment narcotics traffickers and members of the Enterprise.  The criminal

4

activities of VARELA, MONTOYA-SANCHEZ, GOMEZ-BUSTAMANTE, ARCANGEL

HENAO-MONTOYA, RAMIREZ-ABADIA, and RENTERIA-MANTILLA included

participation in conspiracies to do the following:  (1) the

illegal trafficking of cocaine; (2) the laundering of drug

proceeds; (3) the bribing of Colombian law enforcement officials

and Colombian politicians; and (4) the kidnaping, torture, and

murder of informants, rival drug traffickers, and other perceived

enemies of the Enterprise.

       c.  GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta,"

the defendant, was at various times relevant to this Indictment

an attorney and counselor to the Enterprise.  PUERTA-PARRA was

responsible for (among other things) resolving internal disputes

within the Enterprise and representing the interests of the

members and associates of the Enterprise in disputes with other

rival Colombian drug cartels.  PUERTA-PARRA's criminal activities

included participation in conspiracies to do the following:  (1)

the illegal trafficking of cocaine; (2) the laundering of drug

proceeds; (3) the bribing of Colombian law enforcement and public

officials; and (4) the kidnaping, torture, and murder of

informants, rival drug traffickers, and other perceived enemies

of the Enterprise.

       d.  DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela,"

and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the

defendants, were at various times relevant to this Indictment

5

high-ranking officials with the Colombian National Police ("CNP") and associates of the Enterprise who acted as enforcers by, in part, kidnaping and murdering individuals who posed a threat to the position, territory, and power of the Enterprise. GONZALEZ-GIL and RODRIGUEZ-ACERO also used their influence within the CNP to protect other members and associates of the Enterprise and to protect the Enterprise's drug loads and drug routes from law enforcement scrutiny of their criminal activities. The criminal activities of GONZALEZ-GIL and RODRIGUEZ-ACERO included participation in conspiracies to do the following: (1) the illegal trafficking of cocaine; (2) the laundering of drug proceeds; (3) the bribing of Colombian law enforcement and public officials; and (4) the kidnaping, torture, and murder of informants, rival drug traffickers, and other perceived enemies of the Enterprise.

      e.  JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendant, was at various times relevant to this Indictment a member of the Enterprise responsible for laundering the Enterprise's cocaine proceeds.

### Purposes of the Enterprise

      6.  The purposes of the Enterprise included the following:

      a.  Enriching members and associates of the Enterprise through the importation and distribution of illegal

drugs in Colombia, Mexico and the United States and the laundering of drug proceeds;

b.    Preserving and protecting the Enterprise's control over the Colombian cocaine-trafficking business through the use of intimidation, threats of violence, and violence, including kidnaping, torture, and murder;

c.    Keeping rival drug traffickers, suspected informants and witnesses, and other enemies of the Enterprise in fear of the Enterprise and in fear of its members and associates through threats of violence and violence; and

d.    Promoting and enhancing the Enterprise and its members' and associates' activities.

<u>Means and Methods of the Enterprise</u>

7.    Among the means and methods by which the defendants, their co-racketeers and other Enterprise members conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.    Defendants, along with other members and associates of the Enterprise, acquired raw cocaine paste from individuals in Peru, Colombia, and other places in South America to be processed at laboratories within Colombian;

b.    Defendants, along with other members and associates of the Enterprise, arranged for multi-ton quantities of processed cocaine to be transported from the laboratories

7

through the Norte de Valle del Cauca region of Colombia and
ultimately to the Pacific Coast of Colombia, including the city
of Buenaventura, Colombia;

      c.   Defendants, along with other members and
associates of the Enterprise, pooled their multi-ton cocaine
shipments from the Pacific Coast of Colombia and sent the drug
loads on go-fast boats, fishing vessels, and other maritime
conveyances to Mexico;

      d.   Defendants, along with other members and
associates of the Enterprise, coordinated with Mexican
transportation organizations to receive the pooled ton-quantity
loads and send the drugs into the United States;

      e.   Defendants, along with other members and
associates of the Enterprise, jointly arranged for the proceeds
of their drug trafficking activities in Mexico and the United
States to be smuggled back into Colombia;

      f.   Defendants, along with other members and
associates of the Enterprise, bribed Colombian law enforcement
and other public officials to: (1) protect the Enterprise's
leadership, members, and associates and their drug shipments; (2)
inform Enterprise members and associates of Colombian and United
States law enforcement activities; and (3) block efforts by the
Colombian legislature to permit the extradition of Colombian

8

narcotics traffickers to the United States to be prosecuted for their crimes;

g.   Defendants, along with other members and associates of the Enterprise, discussed Enterprise affairs and business in person and over communications equipment using various codes to disguise their identities and the meaning of their conversations;

h.   Defendants, along with other members and associates of the Enterprise, conducted their own wiretaps to intercept the communications of rival drug traffickers and Colombian and United States law enforcement officials in order to monitor their activities and obtain information useful to the Enterprise;

i.   Defendants, along with other members and associates of the Enterprise, organized and directed the kidnaping, torture, and murder of rival drug traffickers and suspected informants in Colombia; and

j.   Defendants, along with other members and associates of the Enterprise, used the services of the AUC terrorist paramilitary organization to protect their drug routes and drug laboratories.

<u>The Racketeering Violation</u>

8.   From in or about 1990 up to and including the present, in the District of Columbia and elsewhere, Orlando

9

Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 7 above, namely, the Norte Valle Cartel, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), that is, through the commission of the following racketeering acts:

<u>The Pattern of Racketeering</u>

9.    The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

10

## Racketeering Act One
### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

10.   From in or about 1990 up to and including the present, Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

11.   It was a part and an object of said conspiracy that Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and

11

others known and unknown, would and did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 959(a) and 963.

12.   It was a further part and an object of said conspiracy that Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, to wit, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Sections 812, 952(a), 960(b)(1)(A), and 963 of Title 21, United States Code.

### Racketeering Act Two
(Conspiracy To Launder Cocaine Proceeds)

13.   From in or about 1990 up to and including the present, Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a

12

"Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 1956(a)(1)(A)(i) and (B)(i) of Title 18, United States Code.

14. It was a part and an object of the conspiracy that Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," and JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, the transfer of millions of dollars of United States Currency, represented the

13

proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of illegal narcotics transactions, knowing that the transactions were designed in whole and in part (a) to promote the carrying on of specified unlawful activity, and (b) to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

### Racketeering Act Three
#### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

15.    On or about April 24, 1993, DIEGO LEON MONTOYA-SANCHEZ, ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," and JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved approximately 7,300 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

14

### Racketeering Act Four
#### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

16. In or about 1997, Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," and DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved more than 10,000 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

### Racketeering Act Five
#### (Conspiracy To Manufacture And Distribute Cocaine To Be Imported Into The United States)

17. In or about May 2001, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved approximately 13,000 kilograms of cocaine, in violation of Title 21, United States Code, Section 959(a).

15

All in violation of Title 18, United States Code, Section 1962 (c).

## COUNT TWO

### Racketeering Conspiracy

The Grand Jury further charges:

19.  Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.  From in or about 1990 up to and including the present, in the District of Columbia and elsewhere, Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 4 above, namely, the Norte Valle Cartel, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed

16

together and with each other to conduct and participate, directly
and indirectly, in the conduct of the affairs of that enterprise
through a pattern of racketeering activity, as that term is
defined in Title 18, United States Code, Sections 1961(1) and
1961(5), consisting of multiple acts indictable under the
following provisions of federal law:

A.   Title 21, United States Code, Section 952(a) and 959
(manufacture and distribution of cocaine to be imported into the
United States).

B.   Title 18, United States Code, Sections 1956 and 1957
(money laundering).

It was a further part of the conspiracy that each defendant
agreed that a conspirator would commit at least two acts of
racketeering activity in the conduct of the affairs of the
enterprise.

### OVERT ACTS

21.   In furtherance of the conspiracy and to effect the
illegal objects thereof, the following overt acts, among others,
were committed in Colombia and elsewhere:

### THE ENTERPRISE'S VIOLENCE

a.   In or about 1994, Orlando Henao-Montoya and
WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO
LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a
"Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," and JUAN
CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," the defendants, and

17

others known and unknown, conspired to murder and murdered
members of the "Los Burros" in Colombia based on their suspicion
that the "Los Burros," who worked for the Enterprise providing
security for cocaine laboratories, were plotting to kidnap and
kill the leadership of the Enterprise;

      b.   In or about 1996, Orlando Henao-Montoya and
WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," and
DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," the defendants, and
others known and unknown, conspired to murder and murdered Jose
Santacruz, a/k/a "Chepe Santacruz," one of the leaders of the
rival Cali Cartel, in Colombia;

      c.   In or about 1996, Orlando Henao-Montoya, and
WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," the
defendants, and others known and unknown, conspired to murder
William Rodriguez-Abadia, the son of Cali Cartel leader Miguel
Rodriguez-Abadia, in Colombia;

      d.   On or about November 5, 1998, Orlando Henao-
Montoya, WILBER ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon,"
and DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," the defendants,
and others known and unknown, conspired to murder and murdered
Helmer Herrera, a/k/a "Pacho Herrera," one of the leaders of the
rival Cali Cartel, in Colombia; and

      e.   On or about January 5, 2003, WILBER ALIRIO
VARELA, a/k/a "Detergente," a/k/a "Jabon," LUIS HERNANDO GOMEZ-
BUSTAMANTE, a/k/a "Rasguno," and ARCANGEL HENAO-MONTOYA, a/k/a

18

"El Mocho," the defendants, and others known and unknown, conspired to murder and murdered Miguel Solano-Duran, a member of the Norte Valle Cartel, in Cartagena, Colombia based on their mutual suspicion that Solano-Duran was working as an informant for the United States Drug Enforcement Administration.

## THE ENTERPRISE'S BRIBERY OF COLOMBIAN OFFICIALS

f.   Between in or about 1996 to 1999, members of the Enterprise, including GABRIEL PUERTA-PARRA, a/k/a/ "Doctor Puerta", and others known and unknown, attempted to bribe Colombian legislators to block an extradition law permitting the extradition of Colombian narcotics traffickers to the United States for their narcotics-trafficking crimes; and

g.   In or about 2000 or 2001, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," and DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," the defendants, and others known and unknown, attempted to bribe Colombian legislators to revise an extradition law permitting the extradition of Colombian narcotics traffickers to the United States for their narcotics-trafficking in order to make it more difficult for Colombian narcotics traffickers to be extradited to the United States.

19

## SELECTED COCAINE SHIPMENTS SEIZED FROM THE ENTERPRISE

h.    On or about April 24, 1993, co-conspirators of the Enterprise not named as defendants herein possessed approximately 7,200 kilograms of cocaine in Mexico that was seized by law enforcement authorities;

i.    On or about April 18, 1998 and May 29, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 1,000 kilograms of cocaine in Mexico that were seized by law enforcement authorities;

j.    On or about June 18, 1998, September 8, 1998, October 23, 1998, and November 25, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 1,900 kilograms of cocaine in various locations throughout the United States that were seized by law enforcement authorities;

k.    On or about September 26, 1998, co-conspirators of the Enterprise not named as defendants herein possessed approximately 445 kilograms of cocaine in Buenaventura, Colombia that were seized by law enforcement authorities; and

l.    On or about May 3, 2001, co-conspirators of the Enterprise not named as defendants herein possessed approximately 13,000 kilograms of cocaine on the vessel Svesda Maru in the Pacific Ocean that were seized by law enforcement authorities.

In violation of Title 18, United States Code, Section 1962(d).

20

## COUNT THREE

The Grand Jury further charges:

22.   From in or about 1990 up to and including the present, Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

23.   It was a part and an object of said conspiracy that Orlando Henao-Montoya and WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, and others known and unknown, would

21

and did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 959(a).

In violation of Title 21, United States Code, Sections 963, 959(c), 960(a)(3) and 960(b)(1)(B)(ii).

## FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

24.   The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.

25.   Through the aforesaid racketeering activity, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, have interests they have acquired and maintained in violation of Title 18, United States Code, Section 1962, and property constituting, and derived from, proceeds which they obtained, directly and indirectly, from racketeering activity in violation of Title 18,

22

United States Code, Section 1962, thereby making such property,
or an amount of cash equivalent thereto, forfeitable to the
United States of America pursuant to Title 18, United States
Code, Sections 1963(a)(1) and (a)(3).  The intent of the United
States of America to forfeit such property includes, but is not
limited to, the sum of $10 billion.  Said defendants are jointly
and severally liable to the United States for this amount.

<u>Substitute Assets Provision</u>

26.  If any of the property described above as being
subject to forfeiture, as a result of any act or omission of the
defendants --

(a) cannot be located upon the exercise
of due diligence;

(b) has been transferred or sold to, or
deposited with, a third party;

(c) has been placed beyond the
jurisdiction of the court;

(d) has been substantially diminished in
value; or

(e) has been commingled with other
property which cannot be divided without
difficulty;

it is the intention of the United States, pursuant to Title 18,
United States Code, Section 1963(m), to seek forfeiture
forfeitable property.

23

In violation of Title 18, United States Code, Section 1963(a).

## FORFEITURE ALLEGATION AS TO COUNT THREE

27.  As a result of committing the controlled substance offense alleged in Count Three of this Indictment, WILBUR ALIRIO VARELA, a/k/a "Detergente," a/k/a "Jabon," DIEGO LEON MONTOYA-SANCHEZ, LUIS HERNANDO GOMEZ-BUSTAMANTE, a/k/a "Rasguno," ARCANGEL HENAO-MONTOYA, a/k/a "El Mocho," JUAN CARLOS RAMIREZ-ABADIA, a/k/a "Chupeta," CARLOS ALBERTO RENTERIA-MANTILLA, a/k/a "Beto Renteria," GABRIEL PUERTA-PARRA, a/k/a "Doctor Puerta," DANILO ALFONSO GONZALEZ-GIL, a/k/a "Daniela," JORGE ORLANDO RODRIGUEZ-ACERO, a/k/a "El Mono Ciquenta," and JAIRO APARICIO-LENIS, a/k/a "Don Pedro," the defendants, shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting and derived from any proceeds that the said defendants obtained directly and indirectly as a result of the said violation and any and all property used and intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count Three of this Indictment including, but not limited to, the following:

a.   A sum of money equal to approximately $10 billion in United States Currency, representing the amount of proceeds obtained as a result of the controlled substance offenses for which the defendants are jointly and severally liable.

24

## Substitute Assets Provision

28.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

In violation of Title 21, United States Code, Sections 959 and 853.

A TRUE BILL:

_Gurindjp A Baily_

Deputy FOREPERSON.

Jodi L. Avergun, Chief
Narcotics and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20520


By:  Sarah Weyler, Trial Attorney
     Narcotic and Dangerous Drug Section
     Criminal Division
     U.S. Department of Justice
     Washington, D.C. 20530
     (202) 353 - 2586


     Boyd M. Johnson III, Special Trial Attorney
     Narcotic and Dangerous Drug Section
     Criminal Division
     U.S. Department of Justice
     Washington, D.C. 20530
     (202) 353 - 2586

26